UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,     :          14 Cr. 476 (CS)

                                       :

             -v-                      :

DA'QUAN JOHNSON, et al.,                        :

                Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT DAQUAN COUCH'S MEMORANDUM OF LAW
IN SUPPORT OF PRE-TRIAL MOTIONS**

ANTHONY CECUTTI, ESQ.
217 Broadway, Suite 707
New York, New York 10007
Ph: (212) 619-3730

*Attorney for Daquan Couch*

## PRELIMINARY STATEMENT

Daquan Couch is charged with participating in a racketeering conspiracy, in violation of 18 U.S.C. 1962(d) (Count 1), engaging in a firearms offense, in violation of 18 U.S.C. § 924 (c)(1)(A) (iii), and 2 (Count 2) and participating in a narcotics conspiracy, in violation of 21 U.S.C. §§ 846, 841 (a) (1), and 841(b) (1) (C) (Count 10). The Government accuses the defendants of participating in a racketeering conspiracy involving narcotics trafficking, robberies, shootings, assaults and other acts of violence, including the murder of a rival gang member. As with all the other defendants, Mr. Couch, is charged with being a member or associate of the "GMF" gang, which the Government alleges operated in and around the City of Yonkers. Mr. Couch is not alleged to be a founder, leader or organizer of "GMF."

Mr. Couch, respectfully submits this memorandum of law in support of his motion for an Order:

(1) pursuant to Fed. R. Crim. P., Rule 14(a) severing his trial from that of his co-defendants; and (2) directing the Government to provide certain other discovery.

Daquan Couch also hereby joins in the motions of his co-defendants insofar as they are applicable to him.

# ARGUMENT

## POINT ONE

### DAQUAN COUCH IS ENTITLED
### TO A SEVERANCE UNDER
### RULE 14(a), FED.R.CRIM.P.

**A. Severance Based on *United States v. Cassamento***

Severance of this thirteen defendant trial is required by *United States v. Cassamento*, 887 F.2d 1141 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081, 110 S. Ct. 1138, 107 L. Ed. 2d 1043 (1990). This is the type of case under *Cassamento* that mandates a severance.

The burden on the Government to justify a single trial in this case is "especially compelling," 887 F.2d at 1152, and is a burden which the Government cannot satisfy. The prejudice from such a lengthy trial and weeks, and likely months, of evidence some of which likely will have little to do with Mr. Couch, not to mention the prejudice resulting from a joint trial, plainly are factors to be considered in fashioning an appropriate severance under *Cassamento. See also United States v. Bellomo*, 954 F. Supp. 630, 651 (S.D.N.Y. 1997). Simply put, it is fundamentally unfair to require Mr. Couch to defend himself at such a trial, and a trial of all defendants in a single trial is, we submit, is prohibited by *Cassamento*.

**B. Severance Based on Prejudice**

Separate and apart from the break up of this trial required by *Cassamento*, there are other compelling reasons why Daquan Couch should be granted a separate trial from that of his co-defendants. Joinder with the other defendants will unfairly prejudice Mr. Couch and a jury might very well lose its focus on the evidence or lack of evidence as to Mr. Couch because of evidence

4

admitted against others. Rule 14(a) of the Fed. R. Crim. P., which provides in pertinent part as follows:

> "If the joinder of offenses or defendants in an indictment…appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires,"

was designed to remedy the type of prejudice facing Mr. Couch from a joint trial with many of his co-defendants in this case. *See United States v. Allamon*, 2005 WL 2542905 at *1 (S.D.N.Y. Oct. 11, 2005), *quoting United States v. Amato*, 15 F.3d 230, 237 (2d. Cir. 1994).

The prejudice to Mr. Couch in being compelled to endure the enormity of a thirteen defendant trial that will last months, with evidence and testimony about events and acts for which Mr. Couch has not been charged, is manifest. Rule 14(a) allows the court to exercise its discretion in such circumstances, particularly where, as here, the prejudice to Mr. Couch is great and the burden on the Government is minimal. The prejudice to Mr. Couch arises from several factors.

First, prejudice arises from, as stated, the number of defendants and the estimated length of a thirteen defendant trial. As recognized in the caselaw, as the number of defendants in an indictment increases it becomes increasingly difficult for a jury "to keep separate the specific evidence" and charges against each defendant. *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987).

Second, the complexity of the charges in the indictment is another factor militating in favor of severance. The multiplex allegations of acts and transactions, some having nothing to do with Mr. Couch, will confuse any jury and risk conviction based on evidence against others. In a

trial of this complexity, and with thirteen defendants, it will be extraordinarily difficult for a juror to recall the evidence against each defendant.

Further, there is a real risk in this case that the distinctions in the roles of the thirteen defendants, the distinctions in the varying degrees of their knowledge and participation in certain offenses, the distinctions in the varying levels of the knowledge and intent on the part of each of the multiple defendants, and the overall myriad nuances in the proof present in every multi-defendant trial, particularly one as complex as this, will be obscured by the breadth of the allegations and the evidence to be introduced. In these circumstances, the jury will be unable adequately to parse the evidence, differentiate among the thirteen defendants and determine the guilt or innocence of each defendant solely based on the evidence against that defendant. As the court observed in *Gallo*, the complexity of the case makes it difficult for a jury "to keep straight" the specific evidence and charges against each defendant particularly, where, as here, a joint trial will last many months. *Gallo*, 668 F. Supp. at 749. Moreover, we have a real concern in this case that a jury hearing some of the allegations of the indictment against some defendants will be unable to make a fair-minded assessment of the evidence as it relates to Mr. Couch and may simply assume that all defendants are guilty. Guilt by association, or as one Court observed, "guilt by confusion," becomes a palpable problem. *Gallo*, 668 F. Supp. at 750. Further, "[u]ndue prejudice may occur when proof inadmissible against a defendant becomes part of this trial solely due to the presence of co-defendants as to whom its admission is proper." *United States v. Gonzalez*, 2010 WL 339698, at *3 (S.D.N.Y. Jan. 28, 2010), *quoting United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998).

Third, the length of the trial is another factor, which necessitates a severance of Mr. Couch. Given the nature of the charges, the vast number of events alleged in the indictment, the

amount of documents to be introduced in evidence, and the participation of counsel for thirteen defendants, this trial will last, and last and then last some more. A trial of this length, weighs heavily in favor of a severance for Mr. Couch. *See Cassamento,* 887 F. 2d at 1152. There is a fundamental and over-riding unfairness in requiring Mr. Couch to defend himself in a very lengthy trial. The strain on his person and family from such a lengthy trial are more than he or any defendant fairly should be made to endure. *See Gallo*, 668 F. Supp. At 754-55.

Fourth, there is a real danger that a jury hearing all of this proof of acts of racketeering and violence against other defendants could convict Mr. Couch because of association and not evidence. As the Court commented in *Gallo*, in language applicable here, regarding the unfairness of joining in a "complex, multifarious" case those defendants against whom only part of the evidence is relevant,

> "[i]nevitable prejudice" to the peripheral defendants is caused by 'the slow but inexorable accumulation of evidence" against the major players. [citation omitted]. The sheer volume of such evidence against co-conspirators, especially when the prejudiced defendants sit in court for weeks or months on end without their names so much as being mentioned, [citation omitted], can so unbalance the scales that "no amount of cautionary instructions could…undo [ ] the harm…" [citation omitted]. Where the evidence against the "minor' defendants is "so little or so vastly disproportionate in comparison to that admitted against the remainder of the defendants"…the likelihood of spillover prejudice is greatly enhanced.

668 F. Supp. at 750. *See also United States v. McDermott*, 245 F. 3d 133 (2d Cir. 2001); *Zafiro v. United States*, 506 U.S. 534, 538 (1993).

Fifth, the potential for inconsistent or antagonistic defenses among many of the thirteen defendants also is great. The juxtaposition of the indictment's varied allegations against the differing defendants plainly presents an antagonism in the defendants' respective trial defenses, which mandates a separate trial for Mr. Couch. Where, as here, "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," a severance is appropriate. *Zafiro,* 506 U.S. at 539.

If all defendants are tried together, there is a risk that counsel for each of the defendants may "act as a second prosecutor" of the other defendants to advance the position of that counsel's client. *United States v. Copeland*, 336 F. Supp. 2d 223, 224-25 (E. D.N.Y. 2004); *United States v. Volpe*, 42F. Supp, 2d 204, 210 (E.D.N.Y. 1999). On the facts of this case, the acceptance of the defense of one defendant or a grouping of defendants may tend to militate against acceptance of the defenses of others, and the defenses would be so "mutually antagonistic or irreconcilable" and so prejudicial that a severance is required. *Zafiro*, 506 U.S. at 538. *United States v. Salameh*, 152 F. 3d 88, 116 (2d Cir. 1998), *cert. denied,* 525 U.S. 1112, 119 S. Ct. 885, 142 L. Ed. 2d 785 (1999).[1]

Lastly, there is a great likelihood that evidence admissible against other defendants, but not against Mr. Couch, will be admitted at a joint trial. While we anticipate that the Government will argue that much of the evidence is admissible against all of the defendants because of the

---

[1] It is not necessary for any or all of the defendants to testify at trial to raise the issue of antagonistic defenses. *United States v. Mota*, 598 F. 2d 995, 1001 (5th Cir. 1979), *cert. denied,* 439 U.S. 849 (1980); *United States v. Jones*, 1986 WL 7787 *1 (S.D.N.Y. 1986) (Haight, J.) (counsel in cross-examination or in summation may advance antagonistic defenses).

presence of a broad conspiracy charge, that only underscores our argument that the practical reality of the totality of evidence is that the evidence of acts of violence with which many defendants are not charged will undoubtedly prejudice those defendants.

Where, as here, the jury will be exposed to such prejudicial evidence in a joint trial, Mr. Couch is entitled to a severance. *Zafiro*, 506 U.S. at 539. *See United States v. Branker*, 395 F. 2d 881 (2d Cir. 1968), *cert. denied,* 393 U.S. 1029, 89 S. Ct. 639, 21 L. Ed. 2d 573 (1969); *United States v. Kelly*, 349 F. 2d 720, 758 (2d Cir. 1965), *cert denied*, 384 U.S. 947, 86 S. Ct. 1467, 16 L. Ed. 2d 544 (1966); *see also Gallo*, 668 F. Supp. at 749. Further, we submit that the prejudice to Mr. Couch from this evidence cannot be cured by any limiting instruction. *See McDermott*, 245 F. 3d at 139-140 (limiting instruction would require the jury to perform "humanly impossible feats of mental dexterity"); *Gallo*, 668 F. Supp at 753 ("'risk that the jury will not, or cannot follow instructions is so great, and the consequences of failure so vital to the defendants, that the practical and human limitations of the jury system cannot be ignored.'").

**C. Severance Based on Co-defendant Statements**

If the Government intends to offer into evidence at a joint trial any statements by a co-defendant, and such statements "facially incriminate" Daquan Couch (and at this time we are not aware of any), the Court should order a severance of the trial of Daquan Couch based on *Bruton v. United States*, 391 U.S. 123 (1968).

Additionally, we respectfully submit that, at a minimum, the Court should order the Government at this time to specify any post-arrest statement of a non-testifying co-defendant which it intends to introduce at a joint trial and to state how it intends to "Brutonize" those statements. These issues clearly impact on severance and should be dealt with now.

Separate and apart from any *Bruton* issue, we believe that the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004) bars the introduction into evidence of testimonial statements by a non-testifying co-defendant, even if they do not incriminate a co-defendant. In this regard, we submit that *Crawford* introduced "a *per se* bar on the admission of out-of-court testimonial statements that were not subject to prior cross-examination." *United States v. Saget*, 377 F.3d 223, 226 (2d Cir. 2004), *cert. denied,* 543 U.S 1079 (2005). As noted by the Second Circuit in *Saget*, *Crawford* redefines the scope and effect of the Confrontation Clause "premised on the text of the clause, which states that '[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him.'" *Id.* (quoting U.S. Const. amend VI.). Applying the new constitutional rule of *Crawford* requires that the statements of a non-testifying co-defendant be excluded from a joint trial.

Even assuming, *arguendo*, that the Government's redactions relieve any *Bruton* issues, *Crawford* has identified a separate and independent Confrontation Clause issue that requires the preclusion of co-defendant statements to the extent they may provide evidence of the crime alleged. Such statements are inadmissible under *Crawford*.

In reaching it's decision, the Court in *Crawford* found that statements to police officers in the course of interrogation are testimonial. Next, the Court found that "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unable to testify, and the defendant had had a prior opportunity for cross examination." *Crawford*, 541 U.S. at 53-54 (emphasis added). Justice Scalia's opinion in *Crawford* rejected reliance on any evidentiary rule grounded on principles of the reliability of the statement. The Court reiterated that "admission of statements deemed reliable by a judge is fundamentally at odds with the right of confrontation" and that the "the Clause's ultimate goal is to ensure

reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." 541 U.S. at 61. Thus, the Court rejected *Ohio v. Roberts*, 448 U.S. 56 (1980), finding the "unpardonable vice of the *Roberts* test... its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Crawford*, 541 U.S. at 63. The Court's language in *Crawford* was not qualified except as to the applicability of its Confrontation Clause analysis to non-testimonial statements. The issue presented to this Court is whether testimonial statements of a non-testifying co-defendant can be introduced in light of *Crawford*. We submit that they cannot.

The expansive and categorical nature of the Court's opinion in *Crawford* has been recognized by at least two opinions from the Second Circuit. *See United States v. McClain*, 377 F.3d 219, 221 (2d Cir.2002) ("*Crawford* departs from prior Confrontation Clause jurisprudence by establishing a *per se* bar on the admission of out-of-court testimonial statements made by unavailable declarants where there was no opportunity for cross-examination"), and *Saget*, 377 F3d. at 226 ("Crawford abrogates *Roberts* with respect to prior testimonial statements by holding that such statements may never be introduced against the defendant unless he or she had an opportunity to cross-examine the declarant.").

In sum, the express language and reasoning of *Crawford* - as recognized by at least two opinions in this Circuit - require that the testimonial statements of a non-testifying co-defendant be precluded in order to safeguard the protections of the Confrontation Clause. Because resolution of this issue also impacts on severance, the Government should be required now to identify any defendant's statements which it intends to offer in a joint trial.

For all of the foregoing reasons, Mr. Couch is entitled to severance.

## POINT TWO

## DAQUAN COUCH IS ENTITLED TO ADDITIONAL DISCOVERY

### A. Complete *Brady/Giglio* Material Should Be Produced Now

Mr. Couch moves this Court to grant an order compelling the Government to produce all evidence in its possession, custody or control or by the exercise of due diligence should become known, which may be favorable to Mr. Couch and material to the issue of guilt or punishment, or bears upon and could reasonably weaken or affect any evidence proposed to be introduced against Mr. Couch by the government, or bears in any material degree on the charges contained in the indictment or as relevant to the subject matter of the indictment and prosecution under it, or which may lead to exculpatory material. This motion is made under the authority of *Brady vs. Maryland*, 373 U.S. 83, *Giglio v. United States*, 405 U.S. 150 (1972) and *Kyles v. Whitley*, 514 U.S. 419 (1995).

The Government's duty is not lessened because *Brady* material may affect only the credibility of a Government witness. *See U.S. v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. U.S.,* 405 U.S. 150, 154 (1972); *DiSimone v. Phillips*, 461 F.3d 181, 195 (2nd Cir. 2006)("to the extent that the information was also inculpatory … this Court has already made it unmistakably clear that evidence having both an inculpatory and exculpatory effect must be turned over to the defense counsel as *Brady* material"); *U.S. v. Rivas*, 377 F.3d 195, 198-200 (2nd Cir. 2004); *U.S. v. Triumph Capital Group, Inc.,* 544 F.3d 149, 165 (2nd Cir. 2008); *U.S. v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000). The Government is also required to timely disclose information that tends to reduce the level of the defendant's culpability to a less serious charge, or to support a mitigating defense, or to support a motion to suppress evidence, or to support a lower sentence. It is not limited to information that *completely exonerates* the defendant. *See, e.g. Cone v. Bell*,

129 S.Ct. 1769, 1783 n.16 (2009)("the evidence is also consistent with Cone's assertion that he was suffering from chronic amphetamine psychosis at the time of the crimes"); *Brady v. Maryland*, 373 U.S. 83, 84-88 (1963)(the co-defendant's statement that he did the actual killing despite the defendant's admitted participation in the murder); *DiSimone v. Phillips*, 461 F.3d 181, 195 (2nd Cir. 2006)("the evidence supported a potential defense theory that, whatever DiSimone's involvement in the fight, he was not the *cause* of Balancio's death"); *Mendez v. Artuz*, 303 F.3d 411, 414 n.1 (2nd Cir. 2002)("the suppressed information need not wholly discredit the prosecution's theory of the case; it must only 'put the whole case in such a different light as to undermine confidence in the verdict'").

This Court, because of fundamental fairness and constitutional due process, can order pretrial disclosure of *Brady/Giglio* material without regard to materiality pursuant to its supervisory capacity to ensure sound case management: *United States v. Stein*, 424 F.Supp.2d 720, 725 (S.D.N.Y. 2006) (district court is free to order pretrial disclosure as a matter of "sound case management"); *United States v. Starusko*, 729 F.2d 256 (3rd Cir. 1984) (noting that Brady information which will require defense investigation or more extensive defense preparation should be disclosed at an early stage of the case); *United States v. Hong*, 545 F.Supp.2d 281, 282 (W.D.N.Y. 2008)(fundamental fairness and the constitutional due process requirements which underlie the *Brady* mandate provide a court with the discretion to order the timing of the disclosure of such information, even if it may be considered combined *Brady/Jencks* material). Because the strength of the Government's case largely depends on the credibility of its cooperating witnesses, this Court should be vigilant to ensure that the Government does not limit or delay the production of *Brady/Giglio* material. If the defense is forced to wait until the time

of trial, it may well be too late for the defense to contact the witnesses, interview them, and arrange for their being subpoenaed on behalf of the defense.

### B. Requests For Specific *Brady/Giglio* Material

Mr. Couch, to the extent practicable, makes specific requests to put the Government on notice of the kind of evidence he is seeking to have disclosed. *United States v. Agurs*, 427 U.S. 97 (1976). This includes, but is not limited to the following:

   a. Any written or recorded statements, admissions or confessions made by any witness or co-defendant or co-conspirator whether named or unnamed which may be exculpatory, non-incriminatory, or otherwise favorable to this defendant, or any summaries, synopses, notes, memoranda or resumes thereof, regardless of whether such statement were reduced to writing and regardless of whether the government intends to use such statements at trial;

   b. The name and address of such witnesses and the names and addresses of any other witnesses who might be favorable to the defendant;

   c. Any and all written statements made by any witness who has been interviewed by an agent of the government in connection with the subject matter in this case and whom the government presently does not intend to call at trial, regardless of whether such statement has been signed or otherwise adopted or approved by said witness as well as any stenographic, mechanical or electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by said witness to an agent for the government;

   d. The names and addresses of all persons who may have some knowledge of the facts of the present case or who have been interviewed by agents of the government in connection with the case;

   e. The criminal records or any list or summary reflecting the criminal records of all persons the prosecution intends to call at trial;

   f. Any notes, memoranda, summaries, reports or statements of any kind prepared by agents or the government in connection with the investigation of this case;

   g. Any notes, memoranda, summaries, reports or statements of any kind prepared by persons other than agents of the government in connection with the investigation of this case;

h. Information which can be used to impeach government witnesses including matters which might or could motivate the testimony of such persons, including copies of plea agreements or other agreements providing for cooperation by such witness in exchange for favorable treatment by the government, as well as any acts of criminal, immoral or vicious conduct by said persons during their lifetime and factors which might have a bearing upon any bias or hostility of such person toward the defendant;

i. Any record of previous arrests or convictions or any other evidence or information demonstrating participation in dangerous, vicious, immoral or criminal behavior on the part of any persons intended to be called as witnesses by the prosecutor, including but not limited to ``rap sheets,'' police personnel records, or other memoranda;

j. Any statements known to be false or erroneous made to a public servant engaged in law enforcement activity or a grand jury or a court by persons intended to be called as witnesses;

k. Any evidence, testimony, transcript, statement or information indicating that any prospective government witness on any occasion gave false, misleading or contradictory information regarding the charge at bar or any related matters, to persons involved in law enforcement or to their agents or informers;

l. Any evidence, testimony, transcript, statement or information indicating that any prospective government witnesses have given statements which are or may be contradictory to each other;

m. Any information recounting a misidentification of the defendant as a perpetrator of the crime(s) charged or indicating a failure on the part of any potential witness to identify the defendant as the perpetrator of the crime(s) charged;

n. Any information indicating that any prospective government witness has or had a history of mental or emotional disturbance, See Pennsylvania v. Richie, 480 U.S. 39 (1878); United States v. Pallot, 43 Fed Appx 473 (3rd Cir. 2002)

o. Full disclosure of any consideration, promise of consideration, or expectation of consideration offered to any prospective government witness, including but not limited to, leniency, favorable treatment, assistance with respect to any pending legal proceeding, or any reward or other benefit whatsoever which will of could be realized by the witness as a result of their testimony;

p. Any threats, express or implied, direct or indirect, made to any government witness, including criminal prosecution or investigation, any change in the probationary, parole, or custodial status of the witness, or any other pending or

| | | |
|---|---|---|
| | | potential legal disputes between the witness and the government or over which the government has a real, apparent, or perceived influence; |
| | q. | Complete information of each occasion when each witness who was or is an informer, accomplice, or co-conspirator has testified before any court or grand jury, including date, caption, and indictment number of the case; |
| | r. | Any information to the effect that all or some of the evidence which may be utilized by the government at trial was illegally or improperly obtained or was obtained even partially as the result of the improper acquisition of some other evidence or information; |
| | s. | All evidence in the possession, custody or control of the government or any police agency, the existence of which is known to the government, or which by due diligence may become known to the government, which may be, or may tend to be favorable or exculpatory to the defendant, and which is or may be material to the issue of guilt or punishment. |

If there is any doubt as to the exculpatory nature of any evidence or information in the Government's possession, then we request that it be submitted to this Court for an in-camera inspection. When defense counsel makes an appropriate request for disclosure of exculpatory material, the Government must respond by turning over the material at issue, either directly to the defense counsel or via an in-camera review procedure with the trial judge. *United States v. Bocra*, 623 F.2d 281, 284-86 (3rd Cir.1980). In-camera review is conducted routinely in cases involving doubt or ambiguity and the Court will balance the Government's need for confidentiality against the defendant's constitutional right to obtain evidence vital to a fair defense.

We specifically reserve the right to make any additional requests for *Brady/Giglio* material at the time this motion is argued, or at such other time as the existence of such material shall become known to counsel or Mr. Couch. It is respectfully requested that the Court instruct the Government in their search for *Brady/Giglio* material that it specifically interview those members of the law enforcement agency involved in the preparation of this case for the

prosecution and who therefore had contact with any witness whom the prosecution intends to call upon the trial of this action for the type of information in their files relative to the requests made above.

## POINT THREE

### THE GOVERNMENT SHOULD PROVIDE ANY RULE 404(b) EVIDENCE AT LEAST THIRTY DAYS BEFORE TRIAL

Rule 404(b) requires that the Government provide notice of its intention to offer at trial any alleged "other crimes" or other "bad acts" evidence so as to provide the defendant with "reasonable" notice in advance of trial. The purpose of Rule 404(b) is to reduce surprise and promote early resolution of any challenge to the admissibility of the proffered evidence. To reduce the risk of unfair surprise and prejudice to Mr. Couch, the Government should be required to provide any 404(b) evidence, and the purpose that it is being offered, at least thirty days before trial.

Mr. Couch has prior criminal convictions and it is therefore anticipated that the Government intends to offer 404(b) evidence at trial. At this stage, however, it is uncertain, what "other crimes" or other "bad acts" evidence the Government intends to offer. It is undoubtedly much more difficult for Mr. Couch to prepare for trial without being adequately notified by the Government of the "other crimes" or other "bad acts" that it seeks to offer and the purpose for which it is being offered. Untimely notice and or inadequate notice will unfairly prejudice Mr. Couch.

## **CONCLUSION**

For all of the foregoing reasons, the motions of Daquan Couch and those of his co-defendants in which he joins should be granted in all respects.

Dated: New York, New York
August 14, 2015

Respectfully submitted,

By:       /s/      
     Anthony Cecutti
     217 Broadway, Suite 707
     New York, New York 10007
     Ph: (212) 619-3730

*Attorney for Defendant Daquan Couch*